**CAMPESINOS UNIDOS, INC., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent;**

**Center For Employment Training, Intervenor-Respondent.**

**No. 84–7789.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1986.

Decided Nov. 4, 1986.

David T. Smorodin, Steven D. Condra, Thompson, Hine & Flory, Washington, D.C., for petitioner.

Frank Buckley, U.S. Dept. of Justice, James L. Feldesman, Boasberg, Flores, Feldesman & Tucker, Washington, D.C., for respondent.

Before ANDERSON, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

## I.

## INTRODUCTION

Campesinos Unidos, Inc., petitions for review of the Department of Labor's actions in selecting a competing applicant, the Center for Employment Training, to administer employment and training programs for migrant and seasonal farmworkers in several southern California counties during two discrete grant periods. The first of the two grant programs involved was authorized by the Comprehensive Employment and Training Act (CETA) for fiscal year 1982; the second by the successor statute, the Job Training Partnership Act (JTPA), for fiscal year 1984. Each of the grants was for a two-year period. We have jurisdiction to review final decisions of the Department under both Acts. 29 U.S.C. § 817(a) (repealed 1982) and 29 U.S.C. §§ 1578(a) and 1591(e) (continuing § 817(a) jurisdiction) (1982).

Because the grant periods have expired, retroactive remedies were not requested, nor could we fashion any under the applicable statutes and regulations. Because the petitioner does not fall within the "capable of repetition yet evading review" exception and we are without authority to provide any meaningful prospective relief, we dismiss the appeal as moot.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Campesinos Unidos is a private, nonprofit California corporation that provides a variety of services to the migrant and seasonal farmworker populations in five Southern California counties: Orange, Riverside, San Diego, San Bernardino, and Imperial. Its competitor in the grant solicitations, the Center for Employment Training (intervenor in these proceedings), provides similar services.

### A. *Comprehensive Employment Training Act Grant*

In May 1981 the Secretary invited interested organizations to apply for funding to operate employment and training programs for migrant and seasonal farmworkers for fiscal year 1982. In July 1981 both Campesinos Unidos and the Center submitted applications for funding to operate programs in the five counties listed above.

According to Department of Labor regulations and published guidelines, the applications were reviewed and rated by a panel of two knowledgeable but disinterested employees from the Office of Farmworkers and Rural Employment Programs. Campesinos Unidos received a score of 50; the Center, a score of 49.

In early September 1981, the panel recommended to the Grant Officer with authority to award funding that Campesinos Unidos's programs be funded in Orange, Riverside, San Diego, and Imperial counties, and that the Center's programs be funded in San Bernardino County, as well as in a number of other counties not at issue here. Neither organization received funding at that time, however. Rather, both were informed late in October 1981 that their funding requests were being placed in a "deferred" category while the Department conducted a review of their management capabilities.

In February 1982, both organizations were notified that they had "passed" the management review, and that they had been selected as potential grantees. The Grant Officer indicated to Campensinos Unidos that he intended to award it funding for Imperial and Riverside Counties, and that the Center's programs would be funded in San Diego, San Bernardino, and

Orange Counties. However, he did not issue a final decision specifying his reasons.

Campesinos Unidos then began a long odyssey through the Department's appeal procedures. It filed a dual-purpose appeal with the Department's Office of Administrative Law Judges (ALJ). First, it pressed for a final decision from the Grant Officer. Second, it sought review of the proposed award to the Center, despite the lack of a final decision; it contended that it was entitled to the award in all of the counties covered by its application because of its higher rating from the panel. The ALJ twice ordered the Grant Officer to follow prescribed procedures and issue a final decision required by 20 C.F.R. §§ 676.86–88 (1986). Nonetheless, the Grant Officer continued to refuse to do so, choosing instead to challenge Campesinos Unidos's appeal with a motion to dismiss.

The Grant Officer issued a final decision selecting Campesinos Unidos for funding in Imperial and Riverside counties only in October 1982. A previously filed motion by Campesinos Unidos for sanctions against the Grant Officer was eventually denied by the ALJ in August 1983. Campesinos Unidos has not petitioned for review of that order and the part of the petition before us that relates to the CETA application is limited to the issues arising out of the selection of the Center for funding in the three other counties.

During 1983 Campensinos Unidos continued to press for a hearing on its claim that it was wrongfully denied funding in San Diego, San Bernardino and Orange Counties. At the suggestion of the ALJ, it made a formal motion for an expedited hearing in September 1983. Finally, in December 1983 the ALJ granted Campesinos Unidos's motion to consolidate its CETA appeal with the second administrative appeal at issue here, the appeal under the Job Training and Partnership Act, which was by then in effect.

B. *The Job Training And Partnership Act Grant*

Like its predecessor CETA, the JTPA provides for the funding of education and vocational training programs for migrant and seasonal farmworkers. 29 U.S.C. § 1672 (1982). Pursuant to his authority under the JTPA, the Secretary published a "solicitation for grant application" in the Federal Register in May 1983, inviting program proposals for fiscal year 1984. Again, both Campesinos Unidos and the Center for Employment Training submitted competing applications to operate programs in the five disputed counties, San Bernardino, Orange, Riverside, Imperial, and San Diego.

A more elaborate application and review procedure was established by grant solicitation guidelines promulgated under the new Act. *See* 48 Fed.Reg. 23932–37, May 27, 1983; 20 C.F.R. § 633.201, et seq. (1986). Candidates' applications were first screened for general eligibility. Their records as previous grantees were then reviewed, as part of a separate "responsibility review," to determine if they had responsibly administered federally funded programs in the past. Applications that met these criteria, including those of both the Center and Campesinos Unidos, were then forwarded to a neutral panel for competitive review according to specific, published guidelines and rating criteria. Each proposal was evaluated in four areas: (1) administrative capability, (2) program experience, (3) program approval and delivery system, and (4) linkages and coordination. The panelists assigned numerical ratings within a specified range in each of those four areas for each proposal, and kept records of their own observations and comments. After a conference, the panel members combined and averaged their scores. A total of 100 points constituted a perfect score. Campesinos Unidos received an average score of 88, while the Center received an average score of 96. The Grant Officer selected the Center's programs for funding in all five counties.

At the consolidated hearing held in January 1984, Campesinos Unidos presented extensive evidence of improprieties in the

JTPA panel review process. Campesinos Unidos contended, for example, that one or more panel members disregarded certain guidelines, misunderstood at least one of the rating criteria, and considered material submitted by the Center that exceeded the 75–page application limit. It also contended that the Grant Officer selected the Center for funding in all five counties on the basis of score alone, despite the language in the solicitation for grant applications requiring him to consider panelists' written comments as well.

Considering each alleged error separately, the ALJ determined that some mistakes had been made but concluded that each of the panel's scoring errors had only *de minimis* effect. In a decision issued on September 14, 1984, the ALJ found that the Grant Officers' selections of the Center over Campesinos Unidos for three counties under the CETA program, and all five counties under the JTPA program, were not arbitrary and capricious, and he affirmed the decisions. The Secretary declined to act on the matter, and Campesinos Unidos petitioned this court for review.

Because we dismiss the appeal as moot, we do not determine the merits of any individual allegations of error, nor do we decide whether a correction of all of the alleged errors made in connection with the JTPA application would have resulted in Campesinos Unidos receiving the grant award for any or all of the five counties. In fairness, however, we should note that Campesinos Unidos' complaints are far from frivolous.

### III.

### DISCUSSION

#### A. *Introduction*

Campesinos Unidos's basic claim is that, in awarding funding for these programs to the Center, the Department of Labor failed to follow its own guidelines and procedures. It asks us to hold that those decisions were erroneous, and to either desig-

nate it as the grantee in future JTPA grant competitions or, alternatively, remand to the Secretary with instructions to give it some form of preference to future grant awards.

Like the First Circuit, which recently dealt with a similar case,[1] we conclude that the controversy is moot with respect to the Department's past funding decisions, that the "capable of repetition, yet evading review" exception is inapplicable, and that we are without the authority to award prospective relief. We note that our decision is in accord with the Secretary's own newly formulated interpretation of the regulation that sets out the relief available to applicants wrongly denied funding, 20 C.F.R. § 633.205(e) (1986). *See In re Illinois Migrant Council*, No. 84–JTP–10 (Dep't of Labor, July 17, 1986).

#### B. *Mootness*

#### 1. *Legal Standard*

Judicial review of administrative action, like all exercises of the federal judicial power, is limited by the requirement that there be an actual, live controversy to adjudicate. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 72–73, 104 S.Ct. 373, 375–76, 78 L.Ed.2d 58 (1983). It is true that "the concept of mootness is placed under some strain in the context of administrative orders whose formal legal effect is typically shortlived." *Tennessee Gas Pipeline Co. v. Federal Power Commission*, 606 F.2d 1373, 1379–80 (D.C.Cir.1979). For this reason, among others, courts recognize an exception to the mootness doctrine for controversies that are "capable of repetition, yet evade review." *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). If the improper conduct is likely to be repeated, the harm is capable of repetition, and presents a proper controversy for adjudication. *See, Securities Exchange Commission v. Medical Committee for Human Rights*, 404 U.S. 403, 406–07, 92 S.Ct. 577, 579–80, 30

---

**1.** *Maine v. United States Department of Labor,*    770 F.2d 236 (1st Cir.1985).

L.Ed.2d 560 (1972). Moreover, if prospective relief can still be afforded, the controversy is not moot.

### 2. *Capable of Repetition, Yet Evading Review*

██ The grant periods in controversy here, 1982–83 and 1984–85, have both expired. We do not fault Campesinos Unidos for the delays encountered in bringing these matters to final adjudication.[2] The fact remains, however, that all of the funds have been disbursed and expended. The contracts that Campesinos Unidos seeks have been fully performed by another. We cannot undo what has already been done. Campesinos Unidos's claim that the Department violated its own regulations in failing to select it for funding is facially moot.

██ Consequently, we must determine whether Campesinos Unidos has shown a likelihood that the harm it claims to have suffered is likely to occur again, and if so, whether the harm would again evade review. For the purpose of this analysis, we assume, without deciding, that Campesinos Unidos has shown that it should have been chosen over the Center in both grant competitions. Nevertheless, we conclude that Campesinos Unidos's claims are not "capable of repetition, yet evading review."

First, no further claim can arise with regard to CETA grants. The statute has been repealed, and Campesinos Unidos's counsel has represented that the organization has no further cases against the Department involving CETA. Unquestionably, Campesinos Unidos cannot show a likelihood of recurring harm with respect to its CETA claim. *See United Indians of Nebraska v. Donovan,* 702 F.2d 673, 674 (8th Cir.1983) (in light of CETA's repeal, nothing court could decide on the merits can or should provide any precedent for future action).

2. We note, however, that Campesinos Unidos could have sought judicial review of the Grant Officer's continued refusal to issue a final decision on the CETA funding for fiscal 1982, under the APA, as an agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (1982). *See Telecommunications Re-*

Second, the JTPA claim concerns primarily the panel review and scoring portion of the decision-making process, and the Grant Officer's reliance on scores alone in choosing a grant recipient. Because the alleged errors in scoring were so peculiarly fact-oriented and reflected apparent misunderstandings by individual panelists, and because the criteria involved are of the type that are modified with some regularity, we would be reluctant to conclude that the same errors are likely to recur. More important, the Department has since passed regulations clarifying that panel scores are "advisory only," and that the Grant Officer may take other factors into account, (49 Fed.Reg. 41118, 41120 (1984)). Accordingly, it is unlikely that a controversy over the same errors will arise again, Campesinos Unidos's JTPA claim does not fall within the exception.

However, we cannot end our inquiry here. We must still consider Campesinos Unidos's claim that by promulgating 20 C.F.R. § 633.205(e), the Secretary committed himself to affording future relief to disappointed applicants like Campesinos Unidos, and has failed to do so.

### 3. *Prospective Relief*

Campesinos Unidos asks us to designate it as a future recipient of JTPA funding, or, in the alternative, to remand with instructions to the Secretary directing him to award it preference in future funding periods. It argues that preferential status in future grant competitions is precisely the relief contemplated by the Department's own regulation, 20 C.F.R. § 633.205(e). In pertinent part, the regulation reads:

> The available remedy under such an appeal will be the right to be designated in the future rather than a retroactive or immediately effective selection status.

*search and Action Center v. Federal Communications Commission,* 750 F.2d 70, 76–81 (D.C.Cir. 1984) (mandamus will lie to review claims of unreasonable agency delay, which fall into narrow class of interlocutory appeals from agency action over which Court of Appeals appropriately should exercise its jurisdiction).

Therefore, in the event the ALJ rules that the organization should have been selected and the organization continues to meet the requirements of this Part, the Department will select and fund the organization within 90 days of the ALJ's decision, unless the end of the 90–day period is within 6 months of the end of the funding period.

In interpreting the regulation, Campesinos Unidos stresses the phrase "right to be designated in the future," and makes the argument that, in light of the time it takes to perfect an appeal within the agency, if that phrase does not mean in future grant competitions, it means nothing. Campesinos Unidos would have us contrast "in the future" only with "now" or "immediately." It argues that the regulation provides for both short and long-term prospective relief, depending on whether a favorable decision is received during or after the grant period.

The wording of the regulation raises some doubt, in that the colloquial import of "in the future" is not "in the near term." However, our task is to interpret the regulation as a whole, in light of the overall statutory and regulatory scheme, and not to give force to one phrase in isolation.

We are aided by contrasting the regulation as it was initially proposed (48 Fed.Reg. 33211 (1983)) with the regulation as finally promulgated. Having done so, we are persuaded that the Department affirmatively rejected prospective relief beyond the grant period involved when it removed the phrase "the Department will select the organization in the succeeding period" (48 Fed.Reg. 33211, July 20, 1983)), and inserted instead the following language:

> the Department will select and fund the organization within 90 days of the ALJ's decision unless the end of the 90–day period is within 6 months of the end of the funding period.

The inserted language modifies and limits the phrase "in the future." It demonstrates that "in the future" is to be contrasted with "retroactive[ly]" and "immedi-

ately." As the regulation states, there is to be no retroactive application or immediate change; instead the Department shall have a period of 90 days within which to fund the rightful grantee. However, if the end of that 90–day period falls within six months of the end of the grant period, the regulation provides no authorization for the Department to select or fund that applicant. Thus it is clear that the regulation does not provide any remedy for an applicant improperly denied funding if the Department's determination is not reached until the grant period is within nine months of its expiration. It is also clear from this analysis that, when the rightful grantee is to be funded during the grant period, funding will be awarded for the remainder of that period only. In sum, the regulation does not contemplate that funding will be awarded for a new or different period. Had the Secretary so intended, the drafters of the regulation could easily have included an additional sentence specifically providing such a remedy.

We acknowledge that the regulation is far from a model of clarity. When the drafters revised the second sentence of the portion of the regulation we have set out, they failed to make the changes in the first sentence that would have avoided the ambiguity that is now apparent on the face of the regulation. We also acknowledge that our construction of the regulation leaves a disappointed applicant little time to procure a favorable decision and be awarded the remainder of the two-year grant. Still, the applicant does have a remedy, in at least some cases, although the availability of that remedy depends on the speedy processing of its appeal by the Department.

Even were we to consider Campesinos Unidos's suggested construction of the phrase "in the future" to be the more literal one, we would not reach a different result. We believe that, on balance, the interpretation suggested by Campesinos Unidos is at odds with the overall statutory scheme governing these grant awards. *See McKeel v. Islamic Republic of Iran,* 722 F.2d 582, 587 (9th Cir.1983) (rejecting a literal reading of a statute because the

intent of Congress was to the contrary), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984). We conclude that awarding Campesinos Unidos preference in a future grant competition would be contrary to the purpose of the Job Training and Partnership Act, which is to provide the best available services to the migrant farmworker population. *See Hood River County v. United States,* 532 F.2d 1236, 1238 (9th Cir.1976) (per curiam) (disappointed applicant for CETA funding does not come within the zone of interests to be protected by the statute).

■ We agree with the First Circuit that the regulation embodies a rational "policy against providing relief to one improperly denied a grant once the grant period has ended." *Maine v. United States Department of Labor,* 770 F.2d 236, 239 (1st Cir.1985). Moreover, since *State of Maine* was decided, the Secretary has issued his own interpretation of the regulation, and has adopted the construction and the analysis expressed in that decision. *See In re Illinois Migrant Council, Inc.,* No. 84–JTP–10 at 7.

■ In *Illinois Migrant Council,* the ALJ awarded prospective relief under 20 C.F.R. § 633.205(e) to an applicant that was improperly denied JTPA funding. The relief provided was a "credit," for the purpose of future grant applications. The Secretary rejected the remedy, on the ground that affording future preference to disappointed grant-seekers runs counter to the Act's policy of serving migrant and seasonal farmworkers "through the best-qualified applicants for each grant period." *In re Illinois Migrant Council, Inc.,* No. 84–JTP–10 at 8–9.[3] *See also* 29 U.S.C. § 1672(c)(1) (1982). Although not binding on this court, the Secretary's interpretation of his own regulation is entitled to some deference, and here we believe that interpretation to be correct. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (court may rely on the Secretary's informed judgment in interpreting and administering the Act).

In response to the policy argument, Campesinos Unidos makes the point that if, in fact, it was wrongfully rejected for funding, then the Department has already denied the migrant and seasonal farmworkers the "best-qualified applicant," and prejudiced their interests. While that may be the case, we fail to see how a past deprivation of the farmworkers' right to the best possible service-provider justifies a future deprivation of that right the next time the choice must be made. To the contrary, it would seem that, having failed in his obligation once, the Secretary should be even more vigilant in his efforts to protect the farmworkers' interests on the next occasion.

We find the Secretary's decision in *In re National Urban Indian Council,* No. 81–CETA–329 (Dep't of Labor, March 5, 1985) distinguishable. In that case the Secretary approved an ALJ's order that the Indian Council be given future preference as the Native American grantee for CETA programs in Maryland over organizations and agencies not directly controlled by Indian people. That case arose under both CETA and the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450e (1982). The latter act has, as one of its objectives, the encouragement of Indian-controlled delivery organizations. Therefore, there was a combined purpose of benefitting both the recipients of the training and the Indian-run service providers. This purpose of assisting Indian-run organizations fully explains what might otherwise appear to be an inconsistency in policy between *National Urban Indian Council,* and the later-decided *Illinois Migrant Council.*

## IV.

### CONCLUSION

We are sympathetic to Campesinos Unidos's plight. The delays the organization

---

**3.** General procurement policies also support this conclusion. *See* 41 U.S.C. § 253(a)(1)(A) (Supp. III 1985) (government should procure goods and services through "full and open competition through the use of competitive procedures."

encountered in obtaining a final decision from the Grant Officer in the CETA grant competition and an adjudication of its claims within the agency appear to be inexcusable. This is an injustice that we could not remedy, however, without doing a greater injustice. Under the statute, the interests of the migrant and seasonal farmworkers must come first. They are entitled to the services of the best qualified applicant.

Because the grant periods at issue here are completed because the case does not fall within the "capable of repetition, yet evading review" exception, and because we cannot afford Campesinos Unidos prospective relief, we dismiss the petition as moot.

Petition dismissed.