ISLAND'S CHOICE, INC., Petitioner

v.

AMERICAN SAMOA GOVERNMENT, OFFICE OF
PROCUREMENT AND LOLO M. MOLIGA,
CHIEF PROCUREMENT OFFICER, AND
G.H.C. REID & CO., INC., Respondents.

High Court of American Samoa
Appellate Division

AP No. 13-00

July 9, 2001

Before KRUSE, Chief Justice, RICHMOND, Associate Justice, WARD,[*] Acting Associate Justice, ATIULAGI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Petitioner, Roy J.D. Hall, Jr.
For Respondents American Samoa Government and
Procurement Officer, Fiti A. Sunia, Assistant Attorney General
For Respondent G.H.C. Reid & Co. Inc., Jennifer L. Joneson

## OPINION AND ORDER

Disappointed bidder, Island's Choice, Inc. ("ICI"), petitions this court to review an order of the Administrative Law Judge ("ALJ") affirming an agency decision to award the contract for the supply and delivery of milk for the School Lunch Program ("milk contract") to co-defendant G.H.C. Reid and Co., Inc. ("Reid").

Reid and ICI were the two primary bidders who responded to an April 2000 annual invitation for bids published by the Office of Procurement of the American Samoa Government ("OP-ASG"). The bidders competed according to who scored the highest points on an agency-established five-point test, including ("Section I") carton, 200 points, ("Section II") product specifications, 300 points, ("Section III") experience and ability to perform, 200 points, ("Section IV") sample, 200 points, and ("Section V") cost, 300 points. The Source Evaluation Board ("SEB") evaluated the bidders and awarded points in each category.

OP-ASG selected Reid for the milk contract on May 3, 2000. ICI

---

[*] Honorable John L. Ward, II, Judge, District Court of American Samoa, serving by designation of the Secretary of the Interior.

4

appealed the agency decision in a timely and proper manner. Specifically, ICI filed a notice of dispute with the agency almost immediately, on May 16, 2000. OP-ASG denied the notice of dispute on May 30, 2000. ICI then filed a petition for review of agency action with the ALJ on June 19, 2000. The ALJ heard arguments between August 23 and August 30, 2000, on which date Reid was to begin supply and delivery of milk under the milk contract. The ALJ rendered his opinion affirming OP-ASG's award of the milk contract to Reid on September 15, 2000. ICI then submitted a motion to reconsider or to have a new trial to the ALJ. This was apparently denied in open session, and the ALJ published a written order denying the motion on October 12, 2000. Petitioner then followed timely and proper procedure to appeal the ALJ decision. It submitted a petition for this court's review of the ALJ opinion on October 3, 2000. The transcript of ALJ proceedings was filed in court on November 16, 2000; ICI filed its appeal brief on December 22, 2000; and Reid filed its appeal brief on January 22, 2001. ICI then moved to set a date for oral argument on February 7, 2001, which we heard on May 23, 2001. The milk contract term ended, and supply ceased, on June 1, 2001.

In its petition for appellate review of the ALJ decision, ICI has asked for this Court to (1) set aside the milk contract on A.S.C.A. § 4.1044 grounds, and to (2) reverse the order and award the milk contract to ICI, or else grant damages to ICI for OP-ASG's failure to properly award the contract.

Jurisdiction properly arises for Appellate Court review of the ALJ order under A.S.C.A. §§ 4.0604(g) and 4.1041.

## I. Mootness

It is now summer in the American Samoa school year, if not in meteorological terms, and the milk contract has, like the school year, expired with Reid as the purveyor of milk. There is no contract to set aside for petitioner, nor pertinent order to reverse. It thus appears that the issue of the appropriateness and legality of the 2000-2001 contract award is moot.

▪ Judicial power in American Samoa, like the United States, is limited review of presently pending cases or controversies. U.S. CONST. art. III; REV. CONST. AM. SAMOA art. III, § 1; A.S.C.A. § 3.0103; *Burke v. Barnes*, 479 U.S. 361, 363 (1987); *Meredith v. Mola*, 4 A.S.R. 773, 776 (Trial Div. 1973) (citing *Baker v. Carr*, 397 U.S. 186 (1962); *Powell v. McCormack*, 395 U.S. 486 (1969)). Simply put, we cannot hear cases that are moot, or where the issues to be determined are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Senate of*

*the Legislature of Am. Samoa v. Lutali*, 26 A.S.R.2d 125, 129 (Trial Div. 1994); *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam); *Powell*, 395 U.S. at 496.

■ Judicial review of administrative action is limited by the requirement that there be an actual, live controversy to adjudicate. *Campesinos Unidos v. U.S. Dept. of Labor*, 803 F.2d 1063, 1067 (9th Cir. 1986) (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72-73 (1983)). However, courts confronting expired official acts frequently find exception to mootness where the acts at issue are "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911); *see also* CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533.8 (2d ed. 1990). Moreover, if the reviewing court can afford prospective relief, the controversy is not moot. *Campesinos*, 803 F.2d at 1068; *Associacao Dos Industriais de Cordoaria v. United States*, 828 F.Supp. 978, 984 (Ct. Int'l Trade 1993).

Clearly, the issue of to whom to award the milk contract is moot because the school year has ended, the contract has been fully performed, and the contract term of August 30, 2000 to June 1, 2001 has expired. The issue is thus whether or not the procurement acts at issue by OP-ASG in awarding the milk contract to Reid are "capable of repetition, yet evading review," and if they are, whether or not this court can provide prospective relief to ICI.

A. Capable of Repetition, Yet Evading Review

In *Lutali*, the only American Samoa case on record to have dealt with the mootness issue, the Trial Division evaluated the "capable of repetition, yet evading review" doctrine based on a two-part standard employed by the U.S. Supreme Court in *Murphy*, 455 U.S. at 357, which was cited in *Weinstein v. Bradford*, 423 U.S. 147 (1975), and which first originated after a thorough review of the history of the mootness doctrine by that Court in *Sosna v. Iowa*, 419 U.S. 393 (1975). The *Lutali* Trial Court, however, cited a narrower version of the standard used by the U.S. Supreme Court. Specifically, in *Lutali*, the Court stated that in non-class actions, the "capable of repetition, but evading review" doctrine is limited to cases where "(1) a *defendant terminates* the challenged action before the issue is fully litigated, and (2) there is a reasonable expectation the plaintiff would be subject to the same actions in the future." *Lutali*, 26 A.S.R.2d at 129-30 (emphasis added). The exact language used in U.S. Supreme Court cases, however, is: "(1) the challenged action was in its *duration too short to be fully litigated* prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."

6

*Murphy*, 455 U.S. at 357 (emphasis added); *Weinstein*, 423 U.S. at 353 (emphasis added).

The *Lutali* Court thus states a more specific version of the U.S. Supreme Court language. Where the Supreme Court requires that, to overcome a finding of mootness, the challenged action be "too short to be fully litigated," the *Lutali* Trial Court stated the first element as being when "a defendant terminates the challenged action" before it is fully litigated. The language used by the Trial Court in *Lutali* seems a logical, valid and acceptable interpretive application of the Supreme Court's language where a defendant perpetrator terminates a controverted action. This was appropriate in the *Lutali* case, where the *Fono* sued ASG for implementing ASG employee pay increments without prior authorization. Once the suit was initiated, however, the Governor decided not to implement the pay increases, and argued that the case was therefore moot. The Trial Court held that the Governor's conduct fell within its articulated exception for mootness.

The language used by the Trial Division to state the "capable of repetition, yet evading review" doctrine, though appropriate for adjudicating specific fact instances akin to *Lutali*, is unduly restrictive. The Trial Division did not state how or why it deviated from the U.S. Supreme Court language, nor did it indicate that it was doing so. The circumstances where the Trial Division's language apply are simply too specific to be generalized.

■ We expand upon *Lutali* and adopt the more generally applicable language employed by the U.S. Supreme Court in *Sosna*, *Murphy*, and *Weinstein* in evaluating whether or not an action is capable of repetition, yet evading review. For the mootness inquiry, the questions before the court are thus: was the challenged action too short to be fully litigated prior to its cessation or expiration, and is there a reasonable expectation that the same complaining party will be subject to the same action again?

First, was the challenged action in its duration too short to be fully litigated prior to its cessation or expiration? That is, was the agency award of the milk contract too short to be fully litigated prior to its expiration? We find that it was. OP-ASG announced its choice for the milk contract on May 3, 2000. ICI complied with the appeals process and was denied at each level, first applying for review by the OP-ASG, then with the ALJ, and finally filing with the Appellate Court. The most efficient of appeals would not have brought the case to this court until late winter or early spring, at which point the contract would already have been substantially completed. We thus find that the agency's decision on the milk contract is one that may, even under the most proper or timely of circumstances, evade review.

■ The second element of the mootness exception analysis regards whether there is a reasonable expectation that the same complaining party would be subjected to the same action again. As stated in *Lutali,* "'[r]easonable expectation' must go beyond a theoretical possibility of repetition to the same plaintiff." *Lutali,* 26 A.S.R.2d at 129 (citing *Delta Air Lines, Inc. v. Civil Aeronautics Bd.,* 674 F.2d 1 (D.C. Cir. 1982)); *Murphy,* 455 U.S. at 357. ICI is one of the consistent annual bidders to the milk contract, and thus is a plaintiff that would again be subject to the bidding, evaluation and selection process for future milk contracts. Our inquiry, however, is more specific, and regards whether ICI would reasonably be expected to be subject to the specifically challenged actions again, not merely the general process of procurement. We do not judge the merit of the actions, but simply their repeatability.

### 1. Misbranding

Within ICI's general allegation against OP-ASG for its wrongful assessment of points, ICI refers to roughly five specific acts or omissions of OP-ASG in assessing points to bidders. First, with regards to Section I of the five-point test, ICI argues that SEB only subtracted 25 points out of 200 instead of subtracting all 200 points for Reid's alleged misbranding of its product in violation of applicable federal standards for procurement. We need not reach the issue of whether Reid's product was misbranded, whether Reid's labeling violated federal standards, or whether a 25-point subtraction is enough. For the mootness inquiry, we need only ask whether there is a reasonable expectation that the circumstance of an opponent's mislabeling and the SEB's subtraction of points would occur again. ICI's arguments do not indicate that this problem has occurred before or will occur again; no pattern of repetition has been shown, nor does it seem that the mislabeling and point assessment are due to a potentially repeatable, procedural event rather than a one-time event and number assignation. Finding no evidence that this situation has occurred before, and no indication that it will occur again, we find ICI's arguments regarding Reid's misbranding moot.

### 2. Product Specifications

Second, ICI argues that the SEB wrongfully deducted 33 points out of 300 from Section II of its evaluation, regarding product specifications. It appears that ICI did not place the words "Grade A" on its carton, where Reid did, and ICI was penalized for this failure. ICI, however, itself indicates that this deduction was a fluke rather than a recurring mistake, since in previous years, no deduction was made for not including the "Grade A" label. We thus fail to find a reasonable expectation of ICI's again being penalized for failure to place "Grade A" on its carton.

### 3. Failure to Perform

Third, ICI argues that the SEB did not accurately assess Part III of the evaluation, since it did not subtract points from Reid despite Reid's failure to perform or deliver during fifteen days of the 1999-2000 contract. According to ICI, the SEB was not even informed of Reid's failure to perform or deliver. The question is thus whether the SEB can be reasonably expected to again misassess points for failure to perform due to missing information. ICI does not argue that such a lapse of information in the selection process has happened before, or is likely to happen again. As to whether such a point assessment is endemic to the process and by default, repeatable, ICI seems to answer this question for us by introducing the testimony of Tuna Hunkin, an SEB member for the 2000-2001 milk contract. He stated, "we would have deducted points" had they known of the failure. Thus, the assessment seems not to have been the result of an unfair process, but rather a singular occurrence of a forgotten fact.

### 4. Point Scoring

Fourth, ICI argues that Part IV of the test, the sample portion, was inappropriately point-scored for all bidders. Specifically, ICI argues that the correct method of point-scoring is to divide the 200 points into three sections of 67 points each, labeled "A," "B," and "C." Russell Aab ("Aab"), a member of the SEB in 2000-2001 who tallied the scores, apparently allocated all 200 points to the "C" category, entitled the "Taste Test Panel." It appears that there is no consensus among the SEB as to how Section IV is correctly computed. In testimony before the ALJ, Aab claimed that all 200 points should be allocated to subsection C, while others such as Pat Tervola and Tuna Hunkin claim that the method of dividing into three subsections is correct. It is not clear how Section IV was evaluated in the past.

The disparities in SEB members' accounts tend to reveal inconsistent, nontransparent, and therefore unpredictable point-scoring for Section IV of the evaluations for procurement. We thus find that ICI may reasonably expect itself to be subject to agglomerated point-scoring again.

### 5. Taste Test

Finally, ICI wages a number of arguments against the taste test conducted by the SEB. First, ICI argues that the taste test was a "preference test" of eight members of a taste panel selected by the School Lunch Program department, rather than "an objective testing process that is representative of the students island wide" based on a "comparative study

based on past data or statistics," which is "scientifically tested for reliability." ICI also argues that the very use of a taste test is inappropriate. The issue confronting the Court for mootness determination is thus whether ICI is reasonably expected to be subject to a taste test, evaluated according to the preferences of a taste test panel, again.

Since the taste test by a taste test panel is, evidently, part of the annual procedure adopted by OP-ASG for evaluating bids, we find that ICI has a reasonable expectation of being subject to it again, in bids for milk procurement contracts.

Overall, we find ICI's appeal with respect to point assessments for misbranding, product specification, and previous noncompliance incapable of repetition, and therefore moot. We further find that ICI's claims with respect to point scoring and the taste test are capable of repetition, yet evading review. We now turn to the question of whether we are able to afford prospective relief for any of these claims.

B. Prospective Relief

As stated by the Ninth Circuit court in *Campesinos*, "if prospective relief can still be afforded, the controversy is not moot." *Id.*, 803 F.2d at 1068; *see also Associacao Dos Industries de Cordoaria*, 828 F.Supp. at 984 ("The test is whether a present controversy exists as to which effective relief may be granted."). In this case, ICI asks for us to set aside the milk contract on A.S.C.A. § 4.1044 grounds, and to reverse the order and award the milk contract to ICI, or else grant damages to ICI for OP-ASG's failure to properly award the contract. Clearly, we cannot reverse OP-ASG's choice for the milk contract and award it to ICI because it has already expired. The remaining question is thus whether we can grant damages to ICI.

■ Federal law 5 U.S.C.A. § 706, the Administrative Procedures Act ("APA"), defines the scope of judicial review for courts reviewing federal agency action. According to this provision, courts subject to the APA may compel agency action or hold it unlawful on a number of grounds. No provision is made, however, for granting monetary relief. Damages are thus simply not available under the APA. *See, e.g.*, *Williams v. Casey*, 657 F.Supp. 921, 926 (S.D.N.Y. 1987).

■ The Legislature of American Samoa has adopted administrative procedures based on an earlier model of the APA effectuating a similar scope of judicial review. MODEL STATE ADMIN. PROCEDURES ACT (1961). Specifically, A.S.C.A. § 4.1040(a) states:

A person who has exhausted all administrative remedies available within an agency and who is aggrieved by a final decision in a contested case shall be entitled to judicial review under this section and 4.1041 through 4.1044.

A.S.C.A. §§ 4.1041 and 4.1044 limit judicial review to actions staying an agency's decision, reversing, or modifying the decision. Therefore, as in the federal case, pecuniary relief is not available in judicial review of administrative proceedings in American Samoa. We note, moreover, that A.S.C.A. § 4.1040(b) allows for "the utilization of, or the scope of, judicial review available under other means of review, redress, relief or trial *de novo* provided by law." If a disappointed bidder wishes for monetary relief, the proper course of action is not through appellate review of administrative proceedings, but rather through such means as a trial *de novo*. *See Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth.*, 82 Cal.Rptr.2d 348 (Cal.App.4th 1999).

Two of ICI's claims against OP-ASG and Reid may be capable of repetition, yet evading review, yet prospective relief is simply not available for any of ICI's claimed grievances. We thus must declare the substance of ICI's petition, moot.

## II. Failure to File a Timely Answer

ICI requested judgment for relief based on Reid's failure to file a timely answer to ICI's initial petition to this Court. As basis for this claim, ICI mistakenly cited A.C.R. 15(b), which provides that judgment be awarded where respondent fails to file an answer within 20 days of petitioner's application for *enforcement of an order*. However, the applicable rule is A.C.R. 15(a), which applies to petitions for review of the *orders themselves* rather than enforcement thereof. This rule sets the standard that "[w]ithin 20 days after the petition is filed, the respondent shall serve on the petitioner and file with the clerk an answer to the petition." However, the rule does not require the court to give judgment where the time schedule is not followed, nor does it impose any other sanction.

ICI's mistake of law is noted, and its claim based thereupon, dismissed.

It is so ordered.