**NATIONAL AUDUBON SOCIETY; Defenders of Wildlife; Seattle Audubon Society; and American Bird Conservancy, Plaintiffs,**

v.

**Colonel Randall J. BUTLER; Brigadier General C.A. Strock; United States Army Corps of Engineers; United States Fish and Wildlife Service; and Jamie Rappaport Clark, Defendants.**

**No. C00–615R.**

United States District Court,
W.D. Washington,
at Seattle.

Aug. 7, 2001.

Richard A. Smith, Smith & Lowney, PLLC, Seattle, WA, for National Audubon Soc., Seattle Audubon soc., American Bird Conservancy.

Richard A. Smith, Smith & Lowney, PLLC, Seattle, WA, Michael P. Senatore, Washington, DC, for Defenders of Wildlife.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Fred R. Disheroon, U.S. Department of Justice, Environmental & Natural Resources, Washington, DC, Samuel D. Rauch, III, U.S. Dept. of Justice, Enrd, Wildlife & Marine, Resources, Washington, DC, for defendants.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Fred R. Disheroon, U.S. Department of Justice, Environmental & Natural Resources, Washington, DC, for U.S. Army Corps of Engineers.

Fred R. Disheroon, U.S. Department of Justice, Environmental & Natural Re-

sources, Washington, DC, Samuel D. Rauch, III, U.S. Dept. of Justice, Enrd, Wildlife & Marine, Resources, Washington, DC, for U.S. Fish and Wildlife Service.

Fred R. Disheroon, U.S. Department of Justice, Environmental & Natural Resources, Washington, DC, for Jamie Rappaport Clark.

Clive James Strong, Idaho Attorney General, Boise, ID, for State of Idaho.

## ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE, GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFFS' MOTION FOR INJUNCTION, AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on the motions of National Audubon Society, Defenders of Wildlife, Seattle Audubon Society, and American Bird Conservancy ("plaintiffs") for summary judgment and injunction, and on the motion of Colonel Randall J. Butler, Brigadier General C.A. Strock, United States Army Corps of Engineers, United States Fish and Wildlife Service, and Jamie Rappaport Clark ("defendants") for summary judgment. Having reviewed the papers filed in support of and in opposition to these motions, the court rules as follows:

## I. BACKGROUND

This action challenges the adequacy of an Environmental Assessment ("EA") and resulting Finding of No Significant Impact ("FONSI") prepared by defendant United States Army Corps of Engineers ("COE") in support of its plan to relocate the Caspian tern colony that nests on Rice Island in the Columbia River estuary.[1] Caspian terns are natural predators of Columbia River salmon smolts. The Corps intends to relocate terns to reduce smolt predation, thereby increasing outmigration. The relocation would involve harassing the terns, altering the habitat on Rice Island, preparing a smaller habitat on East Sand Island, seizing tern eggs, and pursuing undeveloped plans to search for additional tern habitat.

Plaintiffs claim the Fiscal Year ("FY") 2000 EA fails to meet the standards of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, because the proposed plan lacks scientific support regarding its potential effectiveness in increasing salmon survival, fails to analyze the potential effects on the terns, and fails to consider cumulative effects of actions over several years. As a result, plaintiffs claim COE must prepare an Environmental Impact Statement ("EIS") before implementing the plan. Plaintiffs also claim that defendant United States Fish and Wildlife Service ("FWS") must prepare its own EIS before granting a permit to COE that authorizes the taking of up to 300 Caspian tern eggs.

Plaintiffs' first amended complaint alleges three causes of action: (1) COE violated NEPA and the Administrative Procedure Act by preparing an inadequate EA, (2) COE violated NEPA by failing to prepare an EIS, and (3) FWS violated NEPA by failing to prepare an EIS or any other environmental review. Plaintiffs also assert that defendants will continue to manage avian predators in the estuary in the

---

1. Plaintiffs also challenge defendants' proposals to relocate cormorants. Plaintiffs' concerns regarding cormorants are the same as those for terns, the record includes similar evidence regarding both, and the Court's reasoning and conclusions apply equally to both groups. All references to terns in this Order, therefore, also are intended to include cormorants.

future. On April 10, 2000, the Court issued a temporary restraining order and preliminary injunction to prevent tern harassment on Rice Island. On December 11, 2000, the Court denied defendants' motion to dismiss the claims as moot and held that effective relief remained available in the form of ordering defendants to comply with NEPA in subsequent years.

Since the Court's order, COE has finalized a FY 2001 EA and FONSI that proposes tern harassment on Rice Island for the 2001 and 2002 nesting seasons. The FY 2001 EA incorporates the bulk of the language and reasoning of the FY 2000 EA and proposes similar actions, although COE no longer proposes taking tern eggs.

Plaintiffs filed motions for summary judgment and permanent injunction on all three causes of action. Defendants, in turn, filed a motion for summary judgment on mootness grounds. Plaintiffs seek a declaration that COE and FWS must prepare EIS's before taking additional action. Defendants counter that the EA's were sufficient and that no EIS is warranted.

## II. ANALYSIS

### A. Motion to Strike Extra–Record Evidence

 "When a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision ... In these cases, the agency must justify its final action by reference to the reasons it considered at the time it acted." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir.2000) (internal quotations omitted). Exceptions in the NEPA context exist only when (1) necessary to decide whether the agency considered all relevant factors, (2) the agency's decision relied on evidence not included in the record, (3) the technical or complex nature of the case requires supplementary information, or (4) plaintiffs accuse the agency of

bad faith. *See Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 665 (9th Cir. 1998). The party seeking to introduce extra record evidence bears the burden of proving that an exception applies. *See Animal Def. Council v. Hodel*, 840 F.2d 1432, 1438 (9th Cir.1988), *modified*, 867 F.2d 1244 (9th Cir.1989).

 Plaintiffs move to strike four declarations submitted by defendants that were not part of the administrative record. Defendants argue that the declarations support their mootness argument and their opposition to the injunction motion. In addition, defendants argue that the declarations are necessary to correct plaintiffs' mischaracterizations of the record and to explain technical issues. The declarations do not address the mootness issue, nor do they address irreparable harm or explain technical complexities. Even if the declarations were to meet one of the exceptions, they merely explain information the Court already can glean from the record and are unnecessary to the decision of this motion. The plaintiffs' motion to strike is GRANTED.

### B. Defendants' Motion for Summary Judgment on Mootness Grounds

 Judicial review is available only when a live, actual controversy exists to adjudicate. *See Campesinos Unidos, Inc. v. United States Dep't of Labor*, 803 F.2d 1063, 1067 (9th Cir.1986). If the issues are no longer live, or the parties lack an interest in the outcome, the case is moot. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). The controversy remains live after the violation has ceased if effective relief could counteract the effects of the violation. *See Northwest Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir.1988). The party alleging mootness bears the burden of proof, which is a "heavy one."

*County of Los Angeles,* 440 U.S. at 631, 99 S.Ct. 1379.

■ Defendants allege that because the complaint attacks the adequacy of the FY 2000 EA, the case became moot on July 1, 2000, when the Caspian tern nesting season ended. The Court already rejected defendants' argument and denied defendants' motion to dismiss in December 2000. Dkt. # 61. As the order explained, the FY 2000 EA was part of an ongoing effort to reduce avian predation and to protect salmon smolts in the Columbia River. The potential effects will continue, the Biological Opinion that directed the defendants' actions remains in effect until 2005, and plaintiffs therefore retain a legally cognizant interest in limiting future harm based on the alleged NEPA violations.

Nothing has changed to alter the court's prior analysis. Defendants have finalized the FY 2001 EA, but it does not render the claims moot. Rather, the new EA explicitly relies on the reasoning of the FY 2000 EA and recommends a course of action that is "essentially the same." Dkt. # 79, 1:37 (FY 2001 EA); *see also* 1:4, 6. The continuing influence of the FY 2000 EA distinguishes the situation from cases cited by defendants in which an agency no longer relies on a superceded document. *See American Rivers v. National Marine Fisheries Serv.,* 126 F.3d 1118, 1123 (9th Cir.1997); *Idaho Dep't of Fish & Game v. National Marine Fisheries Serv.,* 56 F.3d 1071, 1075 (9th Cir.1995). To the contrary, the alleged improper regulatory framework remains in effect. *See, e.g., Kescoli v. Babbitt,* 101 F.3d 1304, 1309 (9th Cir.1996) (appeal of mining permit not moot where offensive permit condition was included in subsequent permit without material modification). Effective relief, in the form of an order to comply with NEPA and adequately review the environmental effects of the 2000 plan's proposed actions before relying on it to justify future plans, remains available.

■ Even if the claims were moot, they still would fall within the "capable of repetition yet evading review" exception to the doctrine. The exception is limited to cases in which both the duration of the action is too short to be fully litigated and there is a reasonable expectation that the plaintiff will suffer the same injury again. *Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle,* 829 F.2d 933, 939 (9th Cir.1987). The exception is appropriate when there is a public interest in settling the legality of the practices involved. *Id.*

As described by the Court more fully in the December 2000 order, the claims meet both prongs of the test, and nothing has changed to alter the Court's reasoning. *Any* nesting season will last for a short duration that precludes review. Moreover, although the FY 2001 EA covers two seasons, the time period still does not ensure review. *See Alaska Ctr. for the Env't v. United States Forest Serv.,* 189 F.3d 851, 855 (9th Cir.1999) (two-year permit insufficient to allow full litigation). As for the second prong, the major issue in this case—whether the defendants adequately examined the environmental effects of their actions to reduce tern predation on salmon smolts—is likely to recur. In fact, it *has* recurred. Defendants admit in the FY 2001 EA, which is based on the FY 2000 EA, that their plans to control avian predation will require continued action in future years. Dkt. # 79, 1:4, 6, 7, 34. The claims are not moot, and, therefore, the defendants' motion for summary judgment will be DENIED.

*C. Plaintiffs' Motion for Summary Judgment*

*1. Legal Standards*

Summary judgment is appropriate when "there is no genuine issue as to any mate-

rial fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although defendants argue that factual disputes exist, the causes of action arise from a complete administrative record that renders summary judgment appropriate. *See, e.g., Friends of Endangered Species v. Jantzen,* 589 F.Supp. 113, 118 (N.D.Cal.1984).

Agency action is unlawful if arbitrary and capricious. 5 U.S.C. § 702(6). In reviewing the decision not to prepare an EIS under NEPA, the Court examines "whether the agency has taken a 'hard look' at the consequences of its actions, based its decision on a consideration of the relevant factors, and provided a convincing statement of reasons to explain why a project's impacts are insignificant." *National Parks & Conservation Ass'n v. Babbitt,* 241 F.3d 722, 730 (9th Cir.2001) (internal quotations omitted).

NEPA requires agencies to prepare an EIS for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). The agency may prepare an EA first to assess potential effects, but an EIS must be prepared if "substantial questions are raised as to whether a project ... may cause significant degradation of some human environmental factor." *Blue Mountains Biodiversity Project v. Blackwood,* 161 F.3d 1208, 1212 (9th Cir.1998). A plaintiff is not required to show that the effects "will in fact occur." *Id.*

Regulations establish numerous factors the agency must consider when deciding if potential effects—both beneficial and adverse—are "significant." 40 C.F.R. § 1508.27(b). Factors relevant to this case are (1) whether the possible effects are highly uncertain, (2) whether the effects are likely to be highly controversial, and (3) whether the cumulative impact of other, related actions could be significant. *Id.* The agency must prepare an EIS if

any factor applies. *See National Parks & Conservation Ass'n,* 241 F.3d at 731.

If the agency decides not to prepare an EIS, it must provide a "convincing statement of reasons" in the EA to explain why the project's impacts are insignificant. *Blue Mountains Biodiversity Project,* 161 F.3d at 1212. In addition, the EA must "briefly provide[s] sufficient evidence and analysis for determining whether to prepare an EIS or a finding of no significant impact," 40 C.F.R. § 1508.9. Without that information, a court cannot conclude that the agency took the requisite hard look at the action. *See Blue Mountains Biodiversity Project,* 161 F.3d at 1212.

### 2. COE's Proposed Actions Require an EIS

#### a. Uncertainty Requires an EIS

"General statements about 'possible' effects and 'some risk' do not constitute a 'hard look' absent a justification regarding why more definitive information could not be provided." *Neighbors of Cuddy Mountain v. United States Forest Serv.,* 137 F.3d 1372, 1380 (9th Cir. 1998). Although the EA is "where the ... defense of its position must be found," *Blue Mountain Biodiversity Project,* 161 F.3d at 1214, COE has not analyzed possible effects of its actions. Instead, The administrative record shows great uncertainty regarding the environmental effects on both terns and salmon.

The FY 2000 and FY 2001 EA's flatly state that the short-term harassment activities will have no long-term effect on the Caspian tern population, but the documents provide no support for that conclusion. Dkt. # 79, R 1:3, 28 (FY 2001 EA); 13:232, 259 (FY 2000 EA). To the contrary, they indicate that COE has no information regarding tern breeding before

1997 and is uncertain about long-term effects. *Id.* at 1:33. In fact, much of COE's conclusions about tern survivability is based on the breeding in year 2000—the year in which plaintiffs argue COE should have conducted an EIS. NEPA requires. agencies to prepare an EIS *first* to gauge potential damage and *then* act on the results. *See Sierra Club v. United States Forest Serv.*, 843 F.2d 1190, 1195 (9th Cir. 1988).

Not only does the lack of documentation raise questions, internal inconsistencies in the documents also heighten the uncertainty. Despite stating that the activities will have no long-term effect on terns, COE precedes that conclusion with the contradictory "[i]mpacts to Caspian terns may include successful nesting of a smaller colony within the estuary, or *crowding and reduced productivity until colonies reestablish.*" Dkt. # 79, 1:27; 13:259 (emphasis added). Uncertainty over whether the actions would cause decreased breeding productivity in North America's largest Caspian tern colony clearly raises questions about whether the planned actions would have a significant effect. Moreover, the two EA's acknowledge that long-term management is required but propose no long-term plan, which essentially admits uncertainty about the future. *Id.* at 1:2, 4, 6–7, 12, 34; 13:268. COE compounds the uncertainty by admitting the need for additional habitat in the region but providing only vague statements about how to develop the habitat. *Id.* at 1:7, 28; 13:243. Finally, COE's own researchers have pointed to the uncertainties, 13:301 (letter from Daniel Roby), and FWS takes an even stronger stance by recommending that COE develop an EIS to resolve uncertainties. Dkt. # 98, 27:422 (FWS letter).

Uncertainty also exists regarding the effect of tern predation on salmon survival. Although COE cites data supporting the link between reduced predation and increased salmon smolt survival, that data received heavy criticism from commenters. Moreover, the EA's themselves admit a lack of data and then speculate about the possible effects. Dkt. # 79, 1:10 ("gross averages are used for lack of better detail"); 1:17 ("The estimates of avian predation are not sufficiently refined to evaluate impacts on individual stocks"); 1:35 ("6 million fewer smolts being consumed by Caspian terns, of which 960,000 (16 percent) *could have been* listed stocks") (emphasis added). The documents contain almost no information about whether reduced predation would affect the number of smolt that return to the estuary to spawn, which is the true measure of success in reviving salmon runs. The uncertainty over the relationship between the tern and the salmon requires an EIS.

*b. Cumulative Effects Require an EIS*

Cumulative impact includes "incremental impact of the action when added to other past, present, and reasonably foreseeable future actions, regardless of what agency (Federal or non-Federal) or person undertakes such other actions." 40 C.F.R. § 1508.7. An agency cannot avoid an EIS by segmenting actions or labeling them temporary to diminish their significance. 40 C.F.R. § 1508.27(b)(7). Moreover, agencies cannot defer analysis of cumulative impacts to an unspecified future date. *See, e.g., Neighbors of Cuddy Mountain,* 137 F.3d at 1378. They must consider a project as a whole and must consider other actions that might affect the environment, even those actions taken by someone other than the agency. 40 C.F.R. § 1508.7.

COE attempts to label its actions as short-term solutions covering only one or two seasons of breeding, but the language of the FY 2000 EA and the FY 2001 EA

indicates something very different. As described above, both documents repeatedly state the need for long-term planning. In doing so, both recognize that the year's actions do not exist in isolation. Moreover, the FY 2001 EA parrots the language of the FY 2000 EA, debunking any claim that it is an independent document. Just as in *Cuddy Mountain*, the interconnected plans and recognized need for future planning require an EIS.

### c. Public Controversy Requires an EIS

An EIS is necessary when evidence is raised prior to preparation of a FONSI that "casts serious doubt upon the reasonableness of an agency's conclusions." *National Parks & Conservation Ass'n*, 241 F.3d at 736. The agency must then provide a "well-reasoned explanation" of why no public controversy exists. *Id.*

The FY 2000 EA engendered a tremendous public response. The comments received also apply to the FY 2001 EA because it reiterated the same proposals. Many of the comments question the science COE relies upon in linking avian predation to salmon survival. Other comments note that no data exists to support COE's conclusions about environmental effects. The criticism is not limited to conservation groups; FWS even recognizes the controversy and recommends an EIS. Dkt. # 98, 27:422 (letter from FWS). COE itself admits controversy by stating in both EA's that "not all members of the CTWG [Caspian Tern Working Group] concurred with every element of the present proposed action." Dkt. # 79, 1:36 (FY 2001 EA); 13:269 (FY 2000 EA). In the FY 2001 EA, the recognition of controversy is even more blatant, with COE stating that FWS "does not support the CTWG's long-term goal of reducing predation on juvenile salmonids by piscivorous birds." *Id.* at 1:36.

An "outpouring of public protest," *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1334 (9th Cir.1993), such as this strongly counsels the agency to conduct an EIS, especially when the data it relies on is "simply insufficient." *National Parks & Conservation Ass'n*, 241 F.3d at 737. Contrary to defendants' arguments, COE did not simply choose one expert's view over another. Rather, COE lacked data but still proposed acts that even fellow agencies in its own working group believed required more study. The public controversy mandates an EIS.

### 3. The EA Is Insufficient

Plaintiffs' second cause of action argues that the EA provided by COE is legally insufficient. Because the Court finds that NEPA requires COE to draft an EIS, it follows that the FY 2000 EA does not provide a "convincing statement of reasons" for avoiding an EIS. *Blue Mountains Biodiversity Project*, 161 F.3d at 1212. COE's FY 2000 EA, and the FY 2001 EA that repeats its conclusory language, is inadequate under NEPA.

### 4. FWS Action Requires an EIS

An agency can rely on another's EA and FONSI, but only when the underlying documents are themselves adequate. *See State of Idaho v. Interstate Commerce Comm'n*, 35 F.3d 585, 596 (D.C.Cir.1994); *North Carolina v. Federal Aviation Admin.*, 957 F.2d 1125, 1129–30 (4th Cir.1992). As described above, the EA developed by COE is insufficient, and the actions warrant an EIS. FWS, therefore, cannot rely on COE to justify its own failure to draft an EIS. FWS violated NEPA by not ordering its own EIS or EA and will violate NEPA if it relies on the COE's incomplete analysis when FSW issues permits in future nesting seasons.

### D. Motion for Permanent Injunction

 Plaintiffs also move for an injunction that requires COE and FWS to prepare an EIS evaluating their efforts to aid endangered salmon by reducing avian predation. The basis for injunctive relief is the existence of irreparable injury and the absence of legal remedies. *See, e.g., Friends of the Earth v. Hall,* 693 F.Supp. 904, 949 (W.D.Wash.1988). "[B]ecause environmental injury is by its very nature irreparable, when environmental injury is sufficiently likely, the balance of harms will usually favor the issuance of the injunction to protect the environment." *Id.* at 949 (internal citations omitted).

Irreparable harm would result to the Caspian terns and cormorants without an injunction. COE's plan involves harassing the birds but fails to plan for protecting the population in the future. Destroying habitat without creating a long-term alternative would result in irreparable harm. There is no legal remedy that would prevent the harm, so an injunction is necessary. Plaintiffs' motion for permanent injunction is GRANTED. Defendants are ORDERED to refrain from further action regarding Caspian tern and cormorant habitat in the Columbia River estuary and to refrain from harassing the Caspian terns and cormorants until defendants prepare an EIS. As the prevailing parties, plaintiffs are entitled to reasonable fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court will retain jurisdiction to dissolve the injunction upon a showing that defendants have prepared an adequate EIS.

### III. CONCLUSION

The court GRANTS plaintiffs' motion to strike, DENIES defendants' motion for summary judgment on mootness grounds, GRANTS plaintiffs' motion for summary judgment, and GRANTS plaintiffs' motion for injunction.